ams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOHN VANDEVENTER, as personal          )
representative of the Estates of ELISSE )
VANDEVENTER and MARISSA                )
VANDEVENTER, JOHN                      )
VANDEVENTER, individually, and         )
SHELLEE VANDEVENTER, individually,     )
                                       )
              Plaintiffs,     )
                                       )
    vs.                                )    Case No. 07-4018-JAR
                                       )
DALE GUIMOND, and BOARD OF             )
COUNTY COMMISSIONERS OF                )
COFFEY COUNTY, KANSAS,                 )
                                       )
              Defendants.     )
_____)

## MEMORANDUM AND ORDER GRANTING MOTION TO REMAND

This case was originally filed by plaintiffs in Franklin County, Kansas District Court and was removed by defendant Board of County Commissioners of Coffey County, Kansas ("the Board") to this Court on February 5, 2007.  Currently, the following motions are pending before the Court: (1) Plaintiffs' Motion to Remand (Doc. 9); (2) Defendant Guimond's Objection to Order of Magistrate Judge (Doc. 24); (3) Defendant Guimond's Motion to Dismiss (Doc. 28); (4) Defendant Board of County Commissioners of Coffey County Kansas's Motion to Dismiss (Doc. 29); (5) Defendants' Motion to Certify Questions of Law (Doc. 30); (6) Plaintiffs' Motion to Stay Case Pending Court's Decision on Plaintiffs' Motion for Remand (Doc. 32); (7) Motion for Extension of Time to File Response as to Motion to Dismiss; (8) Plaintiffs' Motion for Extension of Time to Respond to Guimond and Coffey County Defendants' Motions to Dismiss and for Consolidated Discovery Conference with Related Federal Case (Doc. 40); and (9)

Defendants' Unopposed Motion for Extension of Time to File Reply as to Motion to Dismiss (Doc. 46).  As described more fully below, the Court grants plaintiffs' motion to remand.  Accordingly, the remaining motions are denied as moot.

## I.      Background

This wrongful death and survival action was filed by the father and stepmother of two young girls who were killed in a plane crash on November 23, 2003, off the coast of Oregon.  Plaintiffs allege that the plane crash was caused by a defective vacuum pump that should have been removed and replaced.  Defendant Dale Guimond was alleged to have negligently inspected the aircraft and certified that it was airworthy, as an employee of Coffey County Airport.

This case has a tortured history that the Court will endeavor to detail.  Plaintiffs originally filed this case in Franklin County, Kansas District Court against Burkdoll Construction L.L.C., Clint Burkdoll, and Dale Guimond on November 23, 2005.  Summons were issued to all three defendants and the Burkdoll defendants were both served on January 26, 2006.[1]  At some point, counsel for plaintiffs contacted counsel for Guimond to determine the proper entity that employed Guimond, believing that airport authorities are separate entities in Kansas.  Guimond's counsel declined to clarify for plaintiffs' counsel the appropriate party to name in the Amended Petition as Guimond's employer.  The original petition includes the following allegations against Guimond:

> On June 11, 2002, subsequent to the installation by Dodson of the subject vacuum pump, Defendant Dale M. Guimond, an FAA certified air frame and power plant mechanic, was hired or otherwise retained by Defendants Burkdoll to perform, and did perform, an annual maintenance and inspection on N10BX

---

[1] Plaintiffs initially alleged that the plane was owned by the Burkdoll defendants.

pursuant to Federal Aviation Regulations. . . . [and] represented in the aircraft log that he had inspected said aircraft, and that that [sic] it was airworthy and approved for return to service.  In conducting said annual inspection and maintenance, Defendant Guimond negligently failed to take any action relating to said vacuum pump including, but not limited tto, inspecting or replacing said vacuum pump, nor did ne note in the aircraft logs nor advise the aircraft owner of the apparent inability to determine the age, hours, or condition of the vacuum pump and the lack of documentation thereof.  At all times during said annual maintenance and inspection Defendant Guimond had available to him the aircraft logs which revealed that the vacuum pump which was installed by Dodson was described only as "serviceable," without any indication as to the number of hours which had been accumulated on said part.  Based upon Defendant Guimond's background, training and experience, Guimond knew or should have known that this was an indication that the part was likely installed in a used condition, and that the age and number of hours of the part could not be determined.  Further, at the time of the inspection, Dale Guimond knew or should have known that the aircraft should not be flown if the age, condition, and time in service of the vacuum pump could not be determined.  Guimond further knew or should have known at the time of inspection that due to the condition and lack of documentation of the vacuum pump, the subject aircraft was not airworthy at the time of the inspection and dangerous to fly.[2]

On June 22, 2006, plaintiffs' motion to amend the petition was granted and the Amended Petition added the following defendants: (1) Coffey County; (2) Coffey County Airport; (3) Coffey County Airport District and/or (4) Coffey County Airport Authority (collectively "the County defendants").  The substance of the original petition was not otherwise substantially amended.  Service was effected on Coffey County by certified mail delivery to the Coffey County Clerk on July 5, 2006.  On August 7, 2006, Guimond and the Coffey County defendants filed a motion to dismiss.  The motion was based on the following arguments: (1) the Kansas

---

[2](Doc. 8, Attach. 2 at 6–7.)

3

Tort Claims Act's ("KTCA") immunity provisions bar any claims against these defendants; and (2) all claims are barred by the statute of limitations because service of process had not been achieved.  Specifically, they argued that there had never been an attempt to serve Guimond,[3] and that the Coffey County defendants were inappropriate parties to the suit under K.S.A. § 19-105, requiring suit against a "subordinate agency of a Kansas County [to be] brought against the Board of County Commissioners of that county."  On August 28, 2006, plaintiffs attempted to serve Guimond in Waterloo, Iowa, where he appeared for a deposition in related litigation.  The County defendants and Guimond objected to the validity of that service under K.S.A. § 12-105b in a supplemental motion to dismiss.  On September 19, 2006, a special process server was appointed by the court and on the same day she personally served Guimond, which was objected to as untimely.

On October 10, 2006, plaintiffs filed a motion for leave to file a second amended petition, removing the County defendants listed in the First Amended Petition and adding the Board of County Commissioners of Coffey County, Kansas.  On November 3, 2006, a return of summons was filed stating that Guimond was served the Amended Petition on October 27, 2006.

The hearing on the motion to dismiss was before the Honorable James J. Smith on December 12, 2006.  Also on that day, the Burkdoll defendants were voluntarily dismissed from the case by plaintiffs.  At the hearing, the court declined to rule on the motion to dismiss on statute of limitations grounds, based on the service arguments.  Instead, the court granted the motion to file a second amended petition to change the name of the County defendants and noted

---

[3]A return of service of summons for Guimond was filed on August 28, 2006, representing that the original petition had been sent by certified mail, addressed to Guimond at an address in Cedar Falls, Iowa on November 26, 2005 and received on November 28, 2005.  The return receipt shows that it was received by Annett Osborne.  (Doc. 8, Attach. 3 at 14.)

4

that more discovery was needed on the issue of service on Guimond.  The Court denied the

motion to the extent defendants sought immunity under the KTCA.  The parties were to draft a

Journal Entry memorializing Judge Smith's ruling, but it was never filed.  On January 16, 2007,

the Second Amended Petition was filed, naming the Board as a defendant.  This petition was

served on the Board by certified mail to the Coffey County Clerk on January 17, 2007.  On

January 18, 2007, a Third Amended Petition was filed, correcting a scrivener's error in the

Second Amended Petition.

Counsel for the parties each filed an affidavit with their briefs, discussing the decision to

ultimately remove this case to federal court on February 5, 2007.  Counsel agree that during a

December 7, 2006 telephone conversation, plaintiffs' local counsel, James Wisler, represented to

Steven Fabert, counsel for the County and Guimond, that he was concerned that once the

Burkdoll defendants were dismissed, the Board would have grounds for a successful motion to

change venue to the Coffey County District Court.  Wisler represented that he would rather have

the case removed to federal court than to have it moved to Coffey County after Judge Smith

ruled on the pending motions, including the motion to dismiss.  Wisler proposed to Fabert that if

he would agree not to transfer venue to Coffey County, Wisler would not remove the case before

Judge Smith could rule on the motion to dismiss at the December 12 hearing.[4]  Wisler maintains

that this offer remained open only until the date of the motions hearing and that because Fabert

never advised him otherwise, the hearing proceeded.  Wisler affirms that his client no longer had

an incentive for removal after Judge Smith ruled, and complains that the Notice of Removal was

filed with no prior consultation.

---

[4]The Court presumes that Wisler meant that he would stipulate to dismissal in state court and then re-file the case in federal court.

Fabert attests that he did not consult with Wisler before filing the notice of removal because Wisler had expressed his preference for federal court during that conversation, and Fabert believed removal would be welcomed by plaintiffs.  Fabert maintains that this impression of plaintiffs' position on the issue was a "significant consideration" in deciding to file the notice of removal.  Because Fabert was aware that the time period for filing a notice of removal based on diversity had passed,[5] he wrote a letter to the Attorney General and to the United States Attorney, on behalf of Guimond, invoking his rights under the Westfall Act.[6]  This letter states in part:

> Please consider this letter to be a request for your office to certify that Mr. Guimond 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose', as an FAA certified airworthiness inspector, as contemplated by 28 U.S.C. § 2679(d).  If you formally decline the opportunity to certify that Mr. Guimond was acting within the scope of his office or employment at the time of the incident out of which the claim arose, Mr. Guimond will have the right under 28 U.S.C. § 2679(c)(3) to ask the court to make that determination independently.
> Please consider this letter also as a request that your office assume the defense of Mr. Guimond as contemplated by 28 U.S.C. § 2679(b).[7]

On March 13, 2007, the United States Attorney's Officer responded to Fabert as follows:

> Based on my review, I have determined that Mr. Guimond was not an employee of the United States at the time of the incident.  A request for a determination of whether or not he was acting within the scope of federal employment under the Westfall

---

[5]*See* 28 U.S.C. § 1446(b) ("a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.")

[6]The Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub. L. 100-694, 102 Stat. 4563 [hereinafter, the Westfall Act].

[7](Doc. 16, Ex. 1 at 7.)

Act, therefore, is not appropriate and the immunity benefits of the Act are not available to Mr. Guimond.[8]

## II.    Analysis

The court is required to remand "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[9]  As the party invoking the federal court's jurisdiction, the Board carries the burden of demonstrating that the requirements for exercising jurisdiction are present.[10]  Because federal courts are courts of limited jurisdiction, the law imposes a presumption against federal jurisdiction,[11] and requires a court to deny its jurisdiction in all cases where such jurisdiction does not affirmatively appear in the record.[12]  "Doubtful cases must be resolved in favor of remand."[13]

In their Notice of Removal, the Board cites 28 U.S.C. § 1442(a)(1) as a basis for jurisdiction.  Under that statute:

> (a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>> (1) The United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, sued in an official or

---

[8](Doc. 16, Ex. 1 at 8–9.)

[9]28 U.S.C. § 1447(c).

[10]*See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001) (citation omitted), *aff'd*, 126 S. Ct. 704 (2005).

[11]*Frederick & Warinner v. Lundgren*, 962 F. Supp. 1580, 1582 (D. Kan. 1997) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)).

[12]*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

[13]*Thurkill v. The Menninger Clinic, Inc.*, 72 F. Supp. 2d 1232, 1234 (D. Kan. 1999) (citing *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), *cert. denied*, 516 U.S. 863 (1995) (further citations omitted)).

> individual capacity for any act under color of such office or
> on account of any right, title or authority claimed under any
> Act of Congress for the apprehension or punishment of
> criminals or the collection of the revenue (emphasis added).

The Board claims that because the Third Amended Petition seeks to hold it liable for the actions of Guimond, who was acting under color of order and authority granted to him by the Federal Aviation Administration ("FAA"), it is authorized to remove the suit. The Board further argues that it is entitled to immunity under the Supremacy Clause and the Westfall Act.

Plaintiffs urge the Court to remand this action back to the Franklin County District Court based on the following: (1) the notice of removal is untimely; (2) the Board waived its right to remove because the County defendants and Guimond filed the motion to dismiss in state court; (3) the Board does not have standing to remove because it is not a federal agency, nor does it act under the direction of a federal officer and because it may not remove on behalf of Guimond; (4) Guimond was not a federal employee; and (5) the Board cannot establish a colorable federal defense. Finally, plaintiffs request attorneys' fees and costs. The Court addresses each of these arguments in turn.

### A.   *Procedural Objections to Removal*

### 1.   Timeliness

Under 28 U.S.C. § 1446, a notice of removal must be filed within thirty days "after the receipt by the defendant, through service of process or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, . . . ." Plaintiffs argue that because the Board had notice of the basis for the proceeding when the first Amended Petition was served on the County Clerk's Office on July 5, 2006, the thirty-day clock began to run at that time and the notice of removal is thus untimely. Plaintiffs reason that because the

8

substantive allegations in the Amended Complaint were identical to those in the Second
Amended Complaint that properly named the Board, it had notice of the suit.

The parties appear to agree that the Board of County Commissioners of Coffey County[14]
is the proper party to be named as Guimond's employer in this lawsuit.   The Second Amended
Petition is the first pleading that names the Board as a defendant, and it was properly served on
the Board on January 17, 2007.  "In the absence of service of process (or waiver of service by
the defendant), a court ordinarily may not exercise power over a party the complaint names as
defendant."[15]  The Supreme Court has held, with regard to the thirty-day time period set forth in
§ 1446:

> [I]t would take a clearer statement than Congress has made to read
> its endeavor to extend removal time (by adding receipt of the
> complaint) to effect so strange a change—to set removal apart
> from all other responsive acts, to render removal the sole instance
> in which one's procedural rights slip away before service of a
> summons, i.e., before one is subject to any court's authority.[16]

This Court finds no indication that the Board was properly served, and therefore fell within the
state court's jurisdiction, before January 17, 2007; thus, the notice of removal on February 5,
2007 was timely filed.[17]

## 2. Waiver

---

[14]K.S.A. § 19-105; *see also Barngrover v. County of Shawnee*, No. 02-4021-JAR, 2002 WL 178914, at *1
(D. Kan. June 10, 2002) (dismissing case for failing to name the Board of County Commissioners and explaining
that other Kansas cases that have allowed suits to continue despite this problem did so because the defendant either
did not raise a defense of improper designation or admitted it was the defendant in the answer); *Dollison v. Osborne
County*, 737 P.2d 43, 46–48 (Kan. 1987).

[15]*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).

[16]*Id.* at 356.

[17]The Court does not rule at this time on any argument asserted in other pending motions that concern the
statute of limitations or service or process.

Next, plaintiffs argue that the Board waived its right to remove this case by litigating the motion to dismiss, as well as other motions, in the state court proceeding.  Plaintiffs argue that the removal is an attempt to appeal Judge Smith's oral ruling at the December 12, 2006 hearing and that the Board should have been on notice early on in the case that removal jurisdiction was apparent.  The Board responds that it is not possible to waive the Westfall Act defense, that it did not litigate federal immunity in state court and that plaintiffs waived the right to object to removal by inviting the removal during counsel's December 7, 2006 telephone conversation.

Plaintiffs are correct that aside from the entities named in the amended petitions, the claims are substantively identical.  The original petition refers to the fact that Guimond was certified by the FAA.  "Waiver occurs when a defendant 'manifest[s] an intent to litigate in the state court. . . .'"[18]  There is authority for the proposition that participating in the state court action, including attempting to seek affirmative relief, manifests an intent to litigate in state court, and thus waives the right to remove.[19]

Plaintiffs argue that the Board's litigation of the motion to dismiss in state court constituted an intent to proceed in state court, and thus, it waived the right to remove the case.  "However, [for there to be a waiver,] it must [have] be[en] unequivocally apparent that the case [was] removable [before the defendant engaged in the litigation conduct], [ ] the intent to waive the right to remove to federal court and to submit to state court jurisdiction must [have been] clear and unequivocal, and the defendant's actions must be inconsistent with the right to

---

[18]*Chavez v. Kincaid*, 15 F. Supp. 2d 1118, 1125 (D.N.M. 1998).

[19]*See, e.g.*, *id.*; *Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1090–91 (C.D. Cal. 2005); *Integra Bank, N.A. v. Greer*, No. IP 4:02-CV-244 B/H, 2003 WL 21544260, at *3  (S.D. Ind. June 26, 2003).

remove."[20]  While the Court acknowledges that such litigation in state court could, in certain circumstances, constitute a waiver, it does not find waiver to have occurred in this case.

The Board's motion to dismiss explicitly asserted that it was neither properly named, nor properly served as a party defendant.  It also argued that it enjoyed immunity under the KTCA.  After a hearing on the matter, Judge Smith ruled only on the immunity argument, denying the motion.  Despite plaintiffs' bare assertions, the immunity argument asserted was strictly based on the KTCA and was not asserted under any federal immunity theory.

It appears evident to the Court, based on counsels' respective affidavits, that removal of this case was somewhat due to a simple misunderstanding between them.  Counsel for the Board attests that he believed plaintiffs desired removal based on representations made to him by plaintiffs' counsel, while plaintiffs' counsel describes an offer to refile in federal court that expired upon the Board's decision to proceed with the hearing in state court on the motion to dismiss.  Either way, the Court is hesitant, given these facts, to conclude that the Board waived its right to remove when it was apparently under the impression that removal would not be contested.[21]

Furthermore, as discussed more fully below, the Court does not deem it "unequivocally apparent" that the case was removable prior to the Board filing its motion to dismiss.  While the petitions all mention the FAA certification obtained by Guimond, the Board (the removing party here) was arguing for dismissal primarily because of the designation and service problems with

---

[20]*Mattel, Inc.*, 441 F. Supp. 2d at 1091 (quoting 16 James Wm. Moore et al., *Moore's Federal Practice* § 107.18[3][a] (3d ed. 2004) (citing numerous cases)).

[21]The Court advises counsel in the future that under these circumstances, they should seek to obtain a consent to removal from the opposing party, to be filed with the notice of removal.  Had this been done, it would certainly have clarified for the Court, plaintiffs' position with regard to removal.  Of course, this would require prior consultation.

regard to both the Board and Guimond.  In other words, the Board and Guimond were both arguing that they were never made proper parties to the suit, or that once they were named, the statute of limitations had run.  Only after the Court allowed plaintiffs to amend their petition to properly add the Board did the Board seek removal.  "[A] defendant who actively invokes the jurisdiction of the state court and interposes a defense in that forum is not barred from the right to removal in the absence of adequate notice of the right to remove."[22]  Given that the Board was not properly named until January 2007, it was not provided with adequate notice of removal prior to that date.  Under these circumstances, the Court is unable to conclude that it was unequivocally apparent that the Board had the right of removal prior to January 17, 2007.

## B.      Removal under § 1442(a)(1)

Normally, only state court actions that could have originally been filed in federal court are removable.[23]  In order to determine whether a claim "arises under" federal law, the Court refers to the "well-pleaded complaint rule."[24]  That rule provides that "federal jurisdiction exists only when a federal question is presented on the facts of the plaintiff's properly pleaded complaint.  The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."[25]  But federal officer removal is an exception to this rule, as "suits against federal officers may be removed [when] despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law."[26]  The

---

[22]*Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1036 (10th Cir. 1998), *cert. denied*, 526 U.S. 1112 (1999).

[23]28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

[24]*See Turgeau v. Admin. Rev. Bd.*, 446 F.3d 1052, 1060 (10th Cir. 2006).

[25]*Caterpillar Inc.*, 482 U.S. at 392 (citation omitted).

[26]*Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431 (1999); *Mesa v. California*, 489 U.S. 121, 136 (1989).

main purpose behind this rule is to assure federal officers' ability to litigate official immunity defenses in federal court.[27]  Federal officer removal is "absolute for conduct performed under color of federal office, and . . . the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'"[28]

A defendant who is not a federal officer or agency must satisfy three elements in order to remove under the federal officer statute.  It must show that: (1) it was a person acting under the direction of a federal officer when performing the inspection and certification; (2) it has raised a colorable federal defense to plaintiff's federal claims; and (3) there is a causal connection between the activities carried out under federal authority and the conduct underlying the state court action.[29]

### 1.   "Person Acting Under" Requirements

The statute "allows *a federal officer* to remove a case to federal court even though that officer is only one of several named defendants."[30]  The doctrine also extends to private individuals and entities that are "acting under" a federal officer.[31]  While it is widely accepted in

---

[27]*Willingham v. Morgan*, 395 U.S. 402, 406–07 (1969); *Christensen v. Ward*, 916 F.2d 1462, 1484 (10th Cir. 1990).

[28]*Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (quoting *Willingham*, 395 U.S. at 407); *see also Mesa*, 489 U.S. at 135..

[29]*Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144, 1149 (D. Colo. 2002); *see also Mesa v. California*, 489 U.S. 121, 138–39 (1989); In re *MTBE Prods. Liability Litig. v. Atlantic Richfield Co.*, –F.3d–, 2007 WL 1500338, at *11 (2d Cir. May 24, 2007); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427–28 (11th Cir. 1996).

[30]*Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034–35 (10th Cir. 1998), *cert. denied*, 526 U.S. 1112 (1999) (emphasis added).

[31]*Freiberg*, 245 F. Supp. 2d at 1149 (citing *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934 (E.D.N.Y. 1992)).

the case law that corporations are considered "persons" under the statute,[32] there is disagreement with respect to state and county agencies.[33]  1 U.S.C. § 1 indicates that, unless the context indicates otherwise, "person" includes corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals.  Under Kansas law, counties are quasi-corporations and the "powers of a county as a body politic and corporate shall be exercised by a board of county commissioners."[34]  The Court finds that this status allows the Board the right to remove under this statute if all other requirements are met, especially given that they are being sued by virtue of the fact that they employ Guimond.

The Court proceeds to determine whether Guimond can establish that he was acting under a federal officer or agency.  "In general, a private person does not establish federal officer jurisdiction merely by showing participation in a regulated industry."[35]  Instead, a private person

---

[32]*See, e.g.*, *Atlantic Richfield Co.*, 2007 WL 1500338, at *11; *Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 845 n.3 (S.D. Ill. 2006) (collecting cases).

[33]*Compare Venezia v. Robinson*, 16 F.3d 209, 212 (7th Cir. 1994) (allowing state agent to remove case based on his affidavit stating that he was acting at the direction of the Federal Bureau of Investigation); *Teague v. Grand River Dam Auth.*, 425 F.2d 13, 134 n.1 (10th Cir. 1970) ( "both parties now agree that removal jurisdiction exists.  The facts are admitted showing, among other things, that release of water here ordered by the Corps of Engineers under authority of the Secretary of Defense so that GRDA acted under an officer of the United States within the meaning of § 1442(a)(1)."); *Clio Convalescent Ctr. v. Mich. Dep't of Consumer & Indus. Servs.*, 66 F. Supp. 2d 875, 876 (E.D. Mich. 1999) (finding state actor entered into agreement with Secretary of Health and Human Services to ensure compliance with federal law and, citing federal regulations, it acted as a state agent by implementing federal regulations pursuant to federal statutory, regulatory, and contractual obligations); *with Vang v. Healy*, 804 F. Supp. 79, 82 (E.D. Cal. 1992) (holding that Director of Social Services was not a person acting under an officer of the United States, but instead, was being sued for a final administrative decision on the plaintiffs' state law claims and according to a state statutory scheme); *N. Colo. Water Conservancy Dist. v. Bd. of County Comm'rs of Grand County*, 482 F. Supp. 1115, 1118 (D. Colo. 1980) (explaining that in Colorado, counties are political subdivisions of the state and only have powers granted to them by the legislature and that the Clean Water Act does not constitute a grant of authority to "political subdivisions of another sovereign" simply because it uses those agencies while pursuing goals).  *C.f. Dalrymple v. Grand River Dam Auth.*, 932 F. Supp. 1311, 1313 (N.D. Okla. 1996) (explaining that just because the defendant dam authority was licensed by a federal agency, it was not transformed into a government contractor such that it enjoyed immunity).

[34]K.S.A. §§ 19-101, 19-103.

[35]*Alsup*, 435 F. Supp. 2d at 845; *see also Atlantic Richfield Co.*, 2007 WL 1500338, at *11..

must show that it "effectively stands in the shoes of a federal employee and, as such, was required by the government to take actions that subjected it to liability under state law. This standard is sometimes termed 'regulation plus.'" To make this showing, the Board points to the language in the Third Amended Petition that refers to Guimond as an FAA certified air frame and power plant mechanic. According to the Board, this certification allows Guimond to remove the case because he was "acting under" the color of authority granted by the FAA.[36] Further, the Board contends without citation that the regulations and directions promulgated by the FAA for the performance of annual inspections is so comprehensive that Guimond was acting under the FAA.

The Board heavily relies on Judge Theis's decision in *In re Air Crash Disaster Near Silver Plume, Colorado, on October 2, 1970.*[37] That case was a multidistrict action under the Federal Tort Claims Act ("FTCA") against the United States, involving a plane that crashed while carrying members of the Wichita State University football team, coaches, and several fans to a scheduled game in Utah. The case included a claim against an FAA Authorized Inspector who performed an annual inspection of the plane and certified it to be airworthy approximately one month prior to the crash. After a bench trial, Judge Theis found that the inspector was a certified mechanic with airframe, powerplant and authorized inspector ratings. The court further found that the FAA required the annual inspection for airworthiness according to specific and detailed regulations, as supplemented by brochures, guidelines, and airworthiness directives

---

[36]The Court notes that in its brief, the Board conflates the "arising under" requirement of § 1442(a)(1), and the colorable defense requirement. The Court discusses whether the Board or Guimond would have a colorable federal defense under the Westfall Act in the next section.

[37]445 F. Supp. 384 (D. Kan. 1977).

15

from the FAA.[38]  The court found that despite the fact that the FAA does not furnish the

inspectors' tools, equipment, job training, job location, or compensation, the FAA, "pursuant to

statutory authority, delegated to AI's the authority to conduct annual inspections to relieve the

burden on FAA paid employees."[39]  The court also found that the inspector failed to fulfill

regulations governing the inspection.[40]  Accordingly, the court concluded that the undisputed

facts showed that the inspector was acting as a federal employee at the time of his inspection

"within the meaning of the Federal Tort Claims Act."[41]

      The Court does not find *In re Air Crash Disaster* dispositive with regard to the facts and

issues of law in this case.  First, Judge Theis was evaluating whether the defendant could be

considered a federal employee under the FTCA.[42]  In contrast, this Court must decide if

Guimond was "acting under" the FAA when he conducted an airworthiness inspection and

certification of the aircraft at issue here.  Second, Judge Theis made findings of fact after a trial

to the court that led him to ultimately conclude that the inspector should be considered a federal

employee.  This Court has not been provided with any record upon which to make similar

findings of fact.[43]  Finally, the Board fails to point the Court to any reference in this opinion or

---

[38]*Id.* at 395–96.

[39]*Id.* at 396.

[40]*Id.*

[41]*Id.* at 406.

[42]*See* 28 U.S.C. § 2671.  The Board's reliance on *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797 (1984), is similarly inapposite.  Again, that case involved a suit against the United States for regulatory enforcement activities by the FAA.  Further, it supports the Court's conclusion that there is a regulatory distinction between designated representatives and those who are merely certified or licensed pursuant to regulation.  *See infra* note 47 and accompanying text.

[43]The Court gives little weight to the affidavit of William Raymond Twa, Jr., attached to plaintiff's motion to remand as Exhibit 5.  To the extent he opines on the meaning of federal regulations, the Court finds it constitutes a legal conclusion and in at least one instance, he asserts a legal conclusion that is inapposite to Supreme Court case

otherwise to statutory or regulatory authority for the proposition that A&P or authorized inspector certifications constitute delegated authority by the FAA for purposes of the federal officer removal statute.

The Board also relies upon the more recent Eleventh Circuit decision of *Magnin v. Teledyne Continental Motors*,[44] involving federal officer removal by the private employer of a Designated Manufacturing Inspection Representative ("DMIR").  The court examined the statute that controls issuance of certificates, including airworthiness certificates and determined that by statute, Congress authorized the FAA  "subject to regulations, supervision, and review . . . [to] delegate to a qualified private person, or to an employee under the supervision of that person, a matter related to . . . issuing the certificate."[45]  The court concluded that a DMIR is an authorized agent of the FAA under this authority.  The Eleventh Circuit reasoned that because the defendant asserted as a defense that "he acted within the scope of his federal duties, that what he did was required of him by federal law, and that he did all federal law required," removal was justified.[46]

The position held by Guimond in this case is distinguishable from the position discussed in *Magnin*.  Subpart C of title 14 of the Code of Federal Regulations sets forth, pursuant to 49 U.S.C. § 44702(d)(1)(B), the kinds of designations that can be made by the FAA under that

---

law.  (Doc. 9, Ex. 5 at 4 ¶ 16); *Varig Airlines*, 467 U.S. at 816 ("The FAA certification process is founded upon a relatively simple notion: the duty to ensure that an aircraft conforms to FAA safety regulations lies with the manufacturer and operator, while the FAA retains the responsibility for policing compliance.").

[44]91 F.3d 1424 (11th Cir. 1996).

[45]49 U.S.C. § 44702(d)(1)(B); *see also* § 44702(a).

[46]*Magnin*, 91 F.3d at 1428; *accord AIG Europe (UK) Ltd. v. McDonnell Douglas Corp.*, No. 02-8703-GAF, 2003 WL 257702, at *2–3 (C.D. Cal. Jan. 28, 2003) (allowing removal for employees who allegedly performed negligent type, production, and airworthiness certifications under the general supervision of the FAA); *but see Charlima, Inc. v. United States*, 873 F.2d 1078, 1079 (8th Cir. 1989) (finding that designated representative of FAA is not a federal employee under the FTCA); *Britton v. Rolls Royce Servs.*, No. C 05-010057 SI, 2005 WL 15622855, at *4 (N.D. Cal. June 30, 2005) (granting remand because the complaint did not specifically identify the defendant as a DMIR, nor allege that the issuance of an airworthiness certificate was the proximate cause of the accident).

section:

> This part describes the requirements for designating private
> persons to act as representatives of the Administrator in
> examining, inspecting, and testing persons and aircraft for the
> purpose of issuing airman, operating, and aircraft certificates. In
> addition, this part states the privileges of those representatives and
> prescribes rules for the exercising of those privileges, as follows:
> (a) An individual may be designated as a representative of the
> Administrator under subparts B or C of this part.[47]

Included designations are DMIRs, designated aircraft maintenance inspectors, designated

engineering representatives, and designated airworthiness representatives.[48]  The Board has not

identified Guimond as any of these types of designated representative of the FAA.  Instead, it

argues that his status as a certified A&P mechanic is analogous to the DMIR in *Magnin*.  But the

basis for the Eleventh Circuit's reasoning in that case was that the FAA had designated the

defendants, who were private individuals, to serve as its representatives pursuant to the statute

and regulations that explicitly provide for such delegations.[49]  No such delegation is alleged here,

nor is there any evidence that Guimond was designated as an authorized representative by the

FAA.[50]

> To consider Guimond to be acting under a federal agency would be to conclude, first, that

---

[47]14 C.F.R. 183.1; *see also Varig Airlines*, 467 U.S. at 807 ("The representatives act as surrogates of the FAA in examining, inspecting, and testing aircraft for purposes of certification. 14 CFR § 183.1.").

[48]14 C.F.R. §§ 183.21–183.33.

[49]*But c.f. Charlima*, 873 F.2d at 1081–82 (finding that a designated airworthiness representative is not a federal employee under the FTCA because the FAA does not exercise the requisite control of day-to-day operations and contending and citing legislative intent).

[50]48 Fed. Reg. 16176 (Apr. 14, 1983) (codified at 14 C.F.R. Part 183).  This amendment to Part 183 established the designated airworthiness representative (DAR) as a new category of persons who could be designated as FAA representatives and perform certain certification functions.  In expanding the "designee system" within the FAA, it states that it "is necessary to expand the designee program to respond to the many requests for FAA examination, inspection, and testing services relating to certification functions that were not within the very limited scope of designations previously authorized by Part 183."  *Id.*

18

there is no distinction between designated representatives and those individuals who are licensed by the FAA.  More importantly, such a conclusion would require the Court to find that Guimond is entitled to federal officer removal merely based on his participation in a highly regulated industry.  The law is clear that Guimond may not remove on this basis.  Accordingly, the Court is unable to find that the Board can satisfy the requirement for federal officer removal that Guimond effectively stood in the shoes of the FAA, or acted under a federal officer or agency, when he conducted the airworthiness inspection and certification.

### 2.    Colorable Federal Defense Requirement

Even if the Board was able to show that Guimond acted under the FAA when he conducted the airworthiness inspection and certification, it is unable to come forward with a colorable federal defense.  In so concluding, the Court is mindful that the defense need only be plausible and that its merits are not to be determined at this time.[51]  In its response, the Board argues that it can assert a colorable federal defense of immunity under the discretionary function exception to liability in the FTCA.  In order to claim sovereign immunity as a defense, the United States would have to be a party to this action, which it is not.  In order to get around this defect, the Board asserts that because Guimond was operating under color of authority granted by the FAA, then neither he nor the Board have any liability under the Westfall Act, which would impute any liability found to the United States.

This argument is both circular and flawed.  First, the Court has already determined that Guimond was not acting under the FAA when he inspected and certified the aircraft in question.  Second, the Westfall Act does not provide either an independent basis for removal, nor a

---

[51]*See, e.g.*, *Magnin*, 91 F.3d at 1427; *Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 854 (S.D. Ill. 2006).

colorable federal defense to liability here.  Absent a certification that the defendant was acting

within the scope of his federal employment at the time of the incident giving rise to suit, §

2679(d)(3) "directs that the case must be remanded to the state court in which the action

commenced."[52]  In fact, "the Westfall Act gives the named defendant no right to remove an

uncertified case."[53]  The Act does, however, provide:

> In the event that the Attorney General has refused to certify scope
> of office or employment under this section, the employee may at
> any time before trial petition the court to find and certify that the
> employee was acting within the scope of his office or employment.
> Upon such certification by the court, such action or proceeding
> shall be deemed to be an action or proceeding brought against the
> United States under the provisions of this title and all references
> thereto, and the United States shall be substituted as the party
> defendant. . . .  In the event the petition is filed in a civil action or
> proceeding pending in a State court, the action or proceeding may
> be removed without bond by the Attorney General to the district
> court of the United States for the district and division embracing
> the place in which it is pending. If, in considering the petition, the
> district court determines that the employee was not acting within
> the scope of his office or employment, the action or proceeding
> shall be remanded to the State court.[54]

The Attorney General has declined to certify that Guimond is a federal employee working within

the scope of his federal employment at the time of the inspection and certification.  Therefore,

his only recourse would be to petition this Court to find and certify that he was acting within the

scope of federal employment.  Guimond has filed a motion to dismiss asserting that he enjoys

immunity because of his status as a federal employee, but he has not petitioned the court under

the statutory procedure set forth in the Westfall Act.  Given the lack of certification, the Court

---

[52]*Osborne v. Haley*, 127 S. Ct. 881, 894 (2007).

[53]*Id.* at 900 n.17.

[54]28 U.S.C. § 2679(d)(3).

fails to see how the Westfall Act could provide the Board or Guimond with a colorable federal defense in this matter.  At this point, the only way in which such a defense is possible is if, after remand, the Board or Guimond petition the state court for a scope of employment certification, and the state court grants the motion, allowing the United States to be substituted as a defendant with the concomitent right to remove.  This Court is unable to find that this tenuous chain of events constitutes a colorable defense.[55]  Because the Board is unable to establish that its employee, Guimond, was acting under a federal officer or agency when he inspected and certified the aircraft in question, and because the Board is unable to establish a colorable federal defense, the Court lacks jurisdiction over this suit and grants plaintiffs' motion to remand this case back to the Franklin County District Court.

### C.      Request for Fees

Plaintiffs ask the Court for an award of attorneys' fees and costs incurred as a result of the improper removal of this case.  Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  *Martin v. Franklin Capital Corp*[56] sets out the appropriate standard for awarding such fees under the statute:

> Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied.

---

[55]To the extent the defendants may assert that their federal defense is that they complied with federal regulations governing inspection and certification, the effort also fails.  Nowhere in any of the amended pleadings do plaintiffs allege that the negligent certification and inspection is a result of the failure to adhere to federal regulations.  The only reference to the FAA is to the fact that Guimond was certified by the agency.  The negligent conduct alleged is that based on his experience and knowledge, he should have detected certain problems with the vacuum pump at issue.

[56]126 S. Ct. 704 (2005).

> In applying this rule, district courts retain discretion to consider
> whether unusual circumstances warrant a departure from the rule
> in a given case.  For instance, a plaintiff's delay in seeking remand
> or failure to disclose facts necessary to determine jurisdiction may
> affect the decision to award attorney's fees.  When a court
> exercises its discretion in this manner, however, its reasons for
> departing from the general rule should be "faithful to the purposes"
> of awarding fees under § 1447(c).[57]

Therefore, the Court must determine whether the Board had an objectively reasonable basis for seeking removal.

Plaintiffs argue that the Board and Guimond intentionally delayed seeking removal and that they had no objectively reasonable basis for removal.  The Court sees no evidence of intentional delay here.  However, the Court is bothered by the length of time it is taking for this case to proceed to discovery, given that since November 2005, the parties have been litigating threshold issues of service and immunity.  Despite this observation, the Court does not find that the Board's basis for removal was not objectively reasonable.  There is no reason to disbelieve Fabert's affidavit in which he states that he believed the plaintiffs were in favor of the removal.  As discussed at length in this Memorandum and Order, the case law on the issues involved here is varied and difficult to reconcile at times.  The Board cited authority for the arguments it advanced and made an objectively reasonable attempt to extend the law in this jurisdiction.  The Court simply disagrees with the Board's interpretation of the case law and regulations at issue that are dispositive on the question of federal officer removal.  Accordingly, the Court denies plaintiffs' request for fees and costs.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiffs' Motion to Remand (Doc. 9) is **granted**.  The case shall be remanded back to the Franklin County District Court.

---

[57]*Id.* at 711 (citations omitted).

The remaining pending motions (Docs. 24, 28, 29, 30, 32, 33, 40, 46) are **denied as moot**.


**IT IS SO ORDERED**.

Dated this 10th day of July 2007.

                                         S/   Julie A. Robinson
                                        Julie A. Robinson
                                        United States District Judge